May it please the Court, my name is Douglas Nelson, here on behalf of the Petitioners. It's important to note that in this case, the immigration judge found the Petitioners credible, and he found that they suffered past persecution. However, the judge's decision, a denial of asylum, was clearly erroneous and not supported by substantial evidence, and it relied upon old law, and he did not consider the precedent for a decision of matter of Pula, which was controlling in this case. He did not consider Pula? No, he concentrated on Schradell and Salem rather than Pula, and that was the basis for his denial. It looks like he covered most of the Pula elements anyway. The elements do cross over, but he misapplied those elements. That's a different question. It looks to me like he covered the Pula elements. If you look at what Pula says and you look at what he said, he covered the elements. Now, he may have gotten them wrong, but he did cover them. It's a little hard to say he ignored Pula or didn't understand the precedent. But what I'm concerned about, Your Honor, is that his concentration on Schradell and Salem, which were clearly outdated law, and that was the reasoning he mostly employed when he denied discretion. Now, let's turn to Pula and see what it says. In Pula, we're supposed to examine the totality of the circumstances and actions of an alien, whether he passed through any other countries, and whether orderly refugee procedures were available in third countries. Now, the question of whether orderly refugee procedures were available implicitly asks the question of whether these procedures actually functioned. The petitioner demonstrated that in Turkey, Greece, and Mexico, orderly procedures were not available or that they did not function. I don't see how he demonstrated that. He said that he talked to some of his friends, and they said, no, don't bother going to, say, the authorities in Greece. They won't do anything for you. That's what he said, and it was credible. It doesn't mean he was reasonable, though, does it? And that's a good point, Your Honor, but let's go through each of the countries, and I'll address Greece in just a second. Let's look at Turkey. Turkey simply doesn't grant refugee status to non-Europeans, and so he never had an orderly procedure available to him in Turkey. The IJ said the contrary, correct? Well, but he did cite the Turkish country report, which stated that. But he said the contrary. He said that now they are doing it regardless of whether you're from Europe. That's what he said. Are you saying that he misstated the facts, the law? What did he misstate when he made that finding? The U.S. Department of State report, which normally is not submitted in these cases, but that report for Turkey specifically stated that non-Europeans are not granted refugee status. Well, he said since 1994 the government has granted temporary asylum, maybe not refugee status, but temporary asylum to people who are refugees, even if they're not from Europe. That's what he said. You're telling me that's erroneous on this record. Is that right? Yes, Your Honor. And one of the conditions of Pula, or one of the criteria of Pula, is whether there's an opportunity to remain permanently in that country. And even if Turkey were to give this petitioner a temporary permit, when you look at the rest of the criteria of Pula, it shows that he can still and should be granted asylum in the United States in discretion. Now, what was his experience in Turkey? He went to Turkey, and he was very fearful because of what other persons who had experience in that country had told him, that the police would return him to Iraq. And he was very fearful of returning to the country or the place of his persecution. So he continued on to Greece. Now, how is he going to obtain information about the orderly refugee procedures in Greece? By talking to persons in his community. And they told him, you have no chance here. You will not be granted status in this country. Those people being people he just talked to there. But he never did approach the authorities. Is that right? That's correct. Because in order to do so... Is he the one, we've got different cases here, did he have any relatives that were in Greece? No, Your Honor. Okay. His relatives, which is also one of the criteria of matter of Pula, resided in the United States, including his brother and sisters. So the logical place of relocation would have been the United States. But when he was in Greece, those persons told him that he could not obtain status in that country. And let's suppose he had made the inquiry. That would require him to go to act contrary to the advice that his friends had given him and to raise his hand basically and say to the Greek authorities, here I am, no matter what my friends tell me, I'm going to come to you and see if you're going to deport me or not. Well, suppose somebody comes to the United States, okay? And he's here for, let's make it a year and two days. And during that year and two days, his friends are saying, listen, you're from Iraq. The United States authorities won't grant you asylum. They just won't do it. They won't do that for anybody from Iraq. That's what his friends tell him, okay? So for a year and two days, he doesn't do anything. He's picked up. And now he wants to ask for asylum. But it's too late, right? And he says, oh, well, you know, that's the way it goes. The United States doesn't grant asylum. Now, it's not that he's not credible. I'm not saying he's not credible. He's credible. He says it credibly. Is he reasonable? Well, what is more rational, to submit yourself to a system which you think is going to remove you to a country where you're persecuted or remain safe but hiding in that country? So I think that's rational for both. How do you determine the orderly refugee procedures? Is it based on what the country does or what the person thinks the country does? I think it's both, Your Honor. Subjective and objective both? Absolutely, Your Honor, because the alien has to be aware of the procedures. If the alien is wholly unaware of the procedures, then how can he avail himself of those procedures? And so there's both components, subjective and objective. So if Greece, in fact, did grant asylum to Iraqis, I had a pretty good clip. But his friends said, because his friends had had a bad experience, they weren't granted it. His friends said, no, Greece just didn't grant asylum to Iraqis, that's all. That's okay, right? Objectively, they do it. But subjectively, he doesn't think so, so he doesn't have to bother asking. Is that right? Yes, Your Honor, but it's more than just a bother of asking, because if, again, he asks, he may be subjecting himself to return to the country. But that's always true. It's true in this country, isn't it? Look, he's asked for asylum here, right? But the experience... Yeah, but we're talking about two different countries. He's asked for asylum. This is America. That's Greece. Yeah, well, I don't agree that every other country in the world is evil, besides ours. No, I didn't say that. He's asked for asylum here. But every one of them is different. He's asked for asylum here, and indeed, he's been denied it. Correct? Two important points regarding that. He has been denied it. Correct. Okay. Two important points. None of his friends told him that he would be subject to deportation or summarily denied asylum if he came and applied in the United States, as opposed to his friends in Greece who told him, it's a non-starter here, you'll get nowhere. I understand. Did he speak the Greek language? No, but there's a Chaldean community in Greece. In Greece, yeah. Correct. Now, and also, his friends in Greece, their experience also matches the country report, because the country report states that 1,100 people applied for refugee status, and out of those 1,100 people for that year, only 62 were granted ñ I'm sorry, 56 were granted or recognized as refugees. I mean, that's a tiny, tiny percentage of persons who apply. And so, in fact, their experience was truthful. Now, the one other point that I really wanted to touch here was that the judge said he's going to deny indiscretion because he didn't want to encourage other persons to come to the United States in a similar fashion. And I've stated in my brief that I think that argument is immoral. This case should be decided solely upon its merits and not whether it has an impact upon the rest of the community. He is not supposed to be teaching other people a lesson, but rather determining whether this person is going to be harmed if returned to his country. And he found so. Also, I supplied the Board of Immigration Appeals with that unpublished decision. I know it's not controlling, but that decision is in identical circumstances with the same judge and the same counsel representing the petitioner, wherein they held the exact opposite, that when you look at a totality of the circumstances, that individual, a matter of MECA, deserves to be granted indiscretion, whereas this family, who has greater ties to the United States, does not. Those are completely incongruent. Thank you. Good morning, Your Honors. May it please the Court, Kate DeAngelis for the Attorney General. I think to start, the most important, well, there's two very important points to consider about this case. And the first, which can't be understated, is that Petitioner and his wife have both been granted withholding of removal. There's no chance that Petitioner and his wife are going to be sent by the United States government back to Iraq. There are alternative routes for them to gain U.S. citizenship. They have family members who are U.S. citizens, and, you know, given that they have withholding of removal, they're out of danger of persecution. Well, have we had – isn't it the rare case where a Petitioner is found to be credible and statutorily eligible for asylum, and asylum is denied? It is, Your Honor. It is relatively rare. Rare. And it happens where the Petitioner is a criminal, right? Well, the – I mean, that's one time when it – that's one occasion. That is one occasion when it has happened. You don't have that here. No, but the statute does grant the attorney general discretion to deny asylum, and it doesn't say that, you know, the attorney general can only deny asylum in the case where the alien is a criminal. No, but under these circumstances that we have in this case, to deny asylum would be rare. Would you agree with that? I would agree that given the cases that have existed, yes, it would be a unusual decision. Be rare. Yes. Yeah, rare. However, the decision was well-reasoned. And you had the other case with practically the same background and facts where asylum was granted. Well, if you're referring to the matter of MECA, first of all, we don't actually have the facts in the record, so it's – you know, there are some obvious similarities. The aliens are from the same country, but without a review of the facts, we can't really determine. I mean, second of all, that – you know, that's not – that's not a precedential decision. Just as this court does not have to follow its unpublished decisions, the board does not either. So insofar as the matter of MECA is a different decision, that we don't have the facts before us, we can't say that the board, you know, acted unreasonably. Well, have you looked at the facts in that case? Excuse me? Have you looked at the facts of that other case? Well, I've read the board decision that was submitted by petitioner. And it's – you know, it's a relatively short board decision. It doesn't go into the facts. It does – you know, it does indicate that the petitioner was from Iraq, that they were granted a discretionary grant of asylum. However, there were significant differences in that case, even from a reading of the board decision. First of all, there the IJ primarily relied on the circumvention of normal refugee procedures. And in this case, it was just one of the factors that the judge considered. He didn't rely primarily on that to make his decision. So there were differences. What is our standard here for determining error here? Well, actually, it's a tough standard for this court. It's that the court would have to find that the immigration judge's decision was arbitrary, irrational, or manifestly contrary to law. Which, in this case, it would be very hard to do because the judge considered many factors thoroughly and comprehensively in coming to the decision that he was, you know, going to deny asylum as a matter of discretion. It was as far from arbitrary and irrational as it could be. It was extremely well-reasoned. We have a case where the IJ finds that the person is credible and finds that they're eligible. And it's a rare case where asylum is denied, and it's denied in the past where a person is a bad person, has a criminal record. Just to deny it here, you don't think that's arbitrary? I don't because the weighing of the factors. Is it close to being arbitrary? Excuse me? Is it close to being arbitrary? No, I would argue it's not close to being arbitrary, just because of the comprehensive treatment that the immigration judge gave to the facts. For example, just to cite one, petitioners lived in Greece for a year, as you mentioned when you discussed with the petitioner's attorney. They lived in Greece for a year. They were able to pay rent. They were able to amass a large amount of money, $21,000 or $15,000, to hire a smuggler to get fraudulent documents. You know, they could have spoken to an attorney in Greece or spoken to somebody at the U.S. Embassy or spoken to some proper authority to determine asylum eligibility. In fact, petitioner has two brothers who gained refugee status for the United States in Greece. He testified to that in his immigration court testimony. And, you know, the fact that he knew that both of his brothers were able to do this through the proper channels from Greece really sort of stands for the notion that petitioners really, you know, wanted to get to the United States. I mean, that was their goal. They had already fled persecution in Iraq. They weren't in danger of being persecuted. They weren't, in fact, persecuted in Greece. And their main goal was to get to the Tijuana border so that they could rejoin their family. This was not a situation where they needed to get to the U.S. to flee persecution. So that was just one of the factors that the judge considered. What if the immigration judge used one factor that was somewhat questionable, like Turkey doesn't really accept people for asylum? If that's wrong, is it irrational? I would say no, because matter of PULA stands for, and any discretionary analysis, stands for an analysis of the totality of the circumstances. You know, here the judge considered many circumstances, including how many countries he passed through, that he was not of tender age, that he had no documented health issues, that he did not establish, he didn't meet his burden to establish that he couldn't apply for asylum through the proper channels, and that he did use fraudulent documents to get to the United States. So, you know, it doesn't matter if he weighed one more, one less, it's still way in the favor of his decision being rational. Are we penalizing people that obtain fraudulent documents to come here? No, we allow aliens to use... Because we know people are desperate. Exactly, and the court has allowed aliens to use fraudulent documentation. When they came to the border at Tijuana, they didn't present any fraudulent documents to our people, did they? No, they didn't, that's right. But the fact of the matter is that, you know, we allow aliens to use fraudulent documentation to flee persecution, which they did, and they got out of Iraq, and they had been living for over a year outside of persecution. And when they were living in Greece, that's when they decided that they wanted to obtain these fraudulent documents to travel to Mexico. So although they didn't use the fraudulent documents to gain entry into the United States, they did use fraudulent documentation to secure entry to the United States and through Mexico, and it wasn't that they were fleeing persecution at that time. It was a completely separate activity. The fleeing of persecution using the forged Iraqi passport is one situation. That got them out of the persecution. And then the second situation was, you know, spending $15,000 to buy this Danish passport in passage for Petitioner and his wife to Mexico. Well, do we know where they got that money? I think Petitioner testified that he got $10,000 from his father in Iraq. He had several thousand dollars as pocket money. He was working in Greece. He testified that he was paying $350 a month in rent. He was working about two days a week in Greece. That's when he testified, yes. The rest of the time he was just in his home. Sorry? The rest of the time he was at home. He didn't go out. Well, that's, yes, that was his testimony. What he said. Yeah. So, you know, reviewing the facts, it seems clear that the immigration judge made a well-reasoned, non-arbitrary, non-irrational decision, and that the Board's decision should be upheld in this case. And that's all I have. Thank you. Mr. Butler. Mr. Priest, your Honor. Remember that after examining all the factors of the matter of Pula, what Pula says, in light of the unusually harsh consequences which may befall an alien who has established a well-founded fear of persecution, the danger of persecution should generally outweigh all but the most egregious of adverse consequences. Come on. That's only half of what it said. It said, well, there's a danger of sending him back. And there's no danger here. Correct? Well, if we were to... He has withholding, does he not? The Board said we're not going to send him back if there's a danger of persecution. And if you look at our case, it starts with a K, Kula or something, Kalubi. We said, hey, when there's withholding, that's off the boards. Yes, but withholding is not a permanent solution. It's permanent enough. It's permanent as long as there's a danger he's going to be persecuted. Come on. But nevertheless, though, legally, he does qualify for and is deserving of the relief of asylum, which gives him... But the point you were making was that the Board has said X, and the Board only said X, where there's real danger. Correct. Okay. But that could be said of any case that's deserving of a discretionary grant of asylum, then. No, because you may not have enough to get withholding, and that's what the Board said. Suppose you don't get a discretionary grant of asylum, but you haven't made the standard withholding. That's a real problem. That's what it said in the rest of that quotation you're talking about. Correct? Correct. But in the discretionary analysis, I think we have clearly proven that the Board did not follow its own rules and precedent decision, and that no egregious circumstances exist to deny the relief of asylum. Thank you. All right. I agree with you. To the next case.
judges: Pregerson, Fernandez, Siler